**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

GASSAN AKMAD EL MOKHAMAD,

and

DONAJANE MARIE EL MOKHAMAD,

        Plaintiffs,

v.                                Case No. 17-12417

JOHN FRANCIS KELLY, Secretary, United
States Department of Homeland Security,

and

MICHAEL J. KLINGER, Detroit Field Office
Director, United States Citizen and Immigration
Services,

        Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING AS MOOT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Donajane Marie El Mokhamad ("Donajane"), a United States citizen,

signed but later withdrew a form I-130 petition on behalf of her husband, Plaintiff

Gassan Akmad El Mokhamad ("Gassan"). They sought a favorable change in residency

status for Gassan, a Russian immigrant currently residing in the United States.

In this suit, Plaintiffs claim that Defendants Department of Homeland Security

and United States Citizen and Immigration Services ("USCIS") threatened Donajane

and coerced her into signing the withdrawal form which incorporated admissions of

marriage fraud. Plaintiffs ask the court to hold a hearing to determine if Donajane

"knowingly, intelligently and voluntarily withdr[ew] her I-130 petition on behalf of her husband. . . ." (Dkt. # 1, Pg. ID 2.) Plaintiffs claim entitlement to this relief based on alleged violations of their right to substantive and procedural due process (Count I) and their right to marriage (Count III). Additionally, they seek a writ of mandamus (Count II) and attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (Count IV). Defendants filed a motion to dismiss, which has been fully briefed. (Dkt. # 6.) The court held a hearing on January 10, 2018. Because Plaintiffs have shown no valid cause of action and no basis for mandamus jurisdiction, the court will grant Defendants' Motion to Dismiss, and deny as moot Plaintiffs' Motion for Summary Judgment. (Dkt. # 7.)

## I. BACKGROUND

When a United States citizen marries a non-citizen immigrant, there is a process the couple may go through to obtain permanent residence or other adjustment in immigrant status for the non-citizen spouse. *See* 8 C.F.R. §§ 204.1, 204.2. The first step in that process is an I-130 petition which, if approved, allows a citizen to obtain an immigrant visa for an immediate relative.[1] 8 U.S.C. § 1154(b). Following the approval of an I-130 petition, the non-citizen will receive a visa once one becomes available. The non-citizen visa holder may then seek lawful permanent residence ("LPR") status, also known as a green card, by filing form I-485. To be eligible for approval of form I-485, the non-citizen must hold a visa and have an approved I-130 petition on file.

---

[1] *See generally* Forms, U.S. Citizenship and Immigration Services (2017) https://www.uscis.gov/forms.

The citizen petitioner may withdrawal his I-130 petition at any time during this process, but caution is advisable because a withdrawal cannot be retracted or appealed, 8 C.F.R. § 103.2(b)(6) & (15), although it may be susceptible to a motion for reconsideration. *Id.* Additionally, if the petitioner subsequently files a new I-130 petition on behalf of the same non-citizen, "[w]ithdrawal or denial due to abandonment shall not itself affect the new proceeding; but the facts and circumstances surrounding the prior benefit request shall otherwise be material to the new benefit request." 8 C.F.R. § 103.2(b)(15).

In order to guard against individuals attempting to subvert immigration laws by fraudulently claiming marriage, USCIS investigates each couple seeking approval of an I-130 petition. The investigation may include interviews of the couple, their friends, and/or family. *See* 8 C.F.R. § 103.2(b). USCIS may also review the couples' financial records and consider their daily activities such as whether they live together and whether they associate with one another's friends and family. If USCIS finds that the non-citizen "has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws," it will not approve the I-130 petition. 8 U.S.C. § 1154(c). Additionally, a non-citizen is ineligible for approval of an I-130 petition if he has previously been denied an immediate relative immigrant visa "by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws." *Id.*

Petitioners may submit evidence of a bonafide marriage to USCIS throughout this process, but they are not afforded a hearing prior to USCIS issuing its decision. If a petitioner is displeased with USCIS's decision on an I-130 petition, he may file a motion

to reopen or reconsider his petition within 30 days of the decision. 8 C.F.R. § 103.5 (a)(1)(i). The petitioner may also appeal to the Board of Immigration Appeals ("BIA") by filing Form EOIR-29 ("Notice of Appeal to the Board of Immigration Appeals from a Decision of a DHS Officer"). *See* 8 C.F.R. § 3.1(b)(5); *see also* 8 C.F.R. § 103.3(a). Following an unfavorable decision by the BIA regarding an I-130 petition, a petitioner may seek review in a United States District Court.

Plaintiff Donajane filed an I-130 petition with Defendant USCIS on behalf of her husband Plaintiff Gassan. Defendant approved the petition in April 2015 without an interview. In May 2015, Gassan filed an I-485 form seeking LPR status.[2] USCIS interviewed Plaintiffs in September 2016 and again in March 2017. During the second of these interviews Donajane signed a statement withdrawing her initial I-130 petition:

> I, Donajane Marie El-Mokhamad, wish to withdraw the Form I-130, Petition for Alien Relative (A#206962665; Receipt # SRC1590011134). I understand that my request for withdrawal will terminate all Service action on this application. I understand that this request for withdrawal may not be retracted. I understand that once acknowledged by the Service a withdrawal may not be appealed.
>
> Further, I wish to state that I realized during the interview on March 3, 2017, that my marriage to Gassan EJ-Mokhamad was not a good faith marriage and that he used me to obtain immigration benefits. When confronted with the inconsistencies between Gassan's statements to the Immigration Officers, and my statements, it became clear that Gassan

---

[2] Plaintiffs' complaint states that he "is a lawful permanent resident of the United States" and that in May 2015 "Plaintiffs jointly filed an Application for Naturalization (I-485)." However, USCIS' Application for Naturalization is Form N-400 and the remainder of Plaintiffs' allegations do not make sense if he has already obtained LPR status. Defendants clarified these facts in their Motion to Dismiss (Dkt # 6, Pg. ID 32) and Plaintiffs adopted Defendants' clarifications in their Response to the Motion to Dismiss, stating that in May 2015 "Plaintiffs filed a Form I-485, Application to Register Permanent Residence or Adjust Status with [USCIS] that placed the Plaintiff, Gassan, on the path towards permanent residency. . . ." and cited the incorrect paragraph in their complaint. (Dkt. # 10, Pg. ID 132.)

used [sic] entered into this marriage for the purpose of evading the immigration laws. Additionally, it appears as though Gassan responded to the Service's request for evidence addressed to me, dated March 17, 2015, with manufactured evidence that I did not provide, and without my knowledge and consent.

(Dkt. # 6-2 and Dkt. # 7-3.)

In April 2017, USCIS denied Plaintiff's LPR status request from his I-485 form. According to Defendants' denial notice, USCIS' grounds for denial were that Donajane "withdrew her Form I-130 and Form I-864 filed on your behalf. USCIS denied the visa petition. Therefore, you are not qualified to adjust status and USCIS denied your form I-485. See INA 254(a)(3)." (Dkt. # 6-4, Pg. ID 47.) Donajane later tried to revoke the withdrawal through a motion for reconsideration (Dkt. # 7-11), but her request was denied as untimely and meritless on the basis that a withdrawal may not be revoked. (Dkt. # 6-5.)

Plaintiffs argue that Donajane's withdrawal of her I-130 petition is invalid because she was "threatened, intimidated and pressured to withdraw her perfectly valid I-130 petition . . . while in a weakened vulnerable state and subject to a medical and psychological injury" (Dkt. # 1, Pg. ID 8.) Plaintiffs claim that "Defendants came to the erroneous conclusion that the Plaintiffs were not involved in a good faith marriage . . . ." (Dkt. #1, Pg. ID 7.) Plaintiffs ask this court to hold a hearing to determine whether her withdrawal was knowing and voluntary and to order USCIS to reopen their petition. Defendants have filed a motion to dismiss (Dkt. # 6) arguing that USCIS' actions do not violate the due process clause because they are related to the achievement of a federal interest; and that Plaintiffs have no right to a hearing regarding Donajane's withdrawal as there is no duty to provide one. Defendants further argue that USCIS' decision is not

a final agency action subject to judicial review, and Plaintiffs' have alleged no present injury.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

However, to survive a motion to dismiss, a complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a "probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.)

## III. DISCUSSION

Plaintiffs have styled their complaint as four counts, which consist of three pages of briefing. Missing, however, is any legal analysis that relates Plaintiffs' conclusory statements to a factual basis. As an initial matter, the complaint presents problems under *Iqbal* and *Twombly*. For example, the crux of Plaintiffs' argument is that Donajane was coerced into withdrawing her I-130 petition; "coercion" is a legal conclusion drawn from facts, and the complaint lacks any factual basis necessary to support such a legal conclusion. True, Plaintiffs did file affidavits factually detailing the alleged coercive measures used by USCIS during their interviews, but these affidavits were attached only to Plaintiffs' Response to the Motion to Dismiss (Dkt. # 10-2, 10-4) and to Plaintiffs' Motion for Summary Judgment. (Dkt. # 7-7, 7-9.) Despite Plaintiffs' "Refer to attached Exhibit 1" reference, they are not found with the complaint. (Dkt. #7-7, 7-9.) They are therefore not evidence which the court may consider in reviewing a motion to dismiss.

Setting aside these preliminary defects, Plaintiffs' complaint nonetheless fails to state a claim upon which relief can be granted, and for the reasons explained below Defendants' motion to dismiss will be granted.

### A. Due Process

Under the Fifth Amendment no person shall "be deprived of life, liberty, or property, without due process of law." This clause has been interpreted to protect an individual's right to both procedural and substantive due process. Pursuant to a substantive due process analysis, any government action that significantly burdens a fundamental right must advance a compelling state interest. *See Beydoun v. Sessions*, 871 F.3d 459, 467 (6th Cir. 2017). "In immigration cases, however, federal courts apply

a much more deferential standard of review to substantive due process challenges even where the immigration law interferes with a plaintiff's fundamental rights." *Bangura v. Hansen*, 434 F.3d 487, 494-495 (6th Cir. 2006) (citing *Fiallo v. Bell*, 430 U.S. 787, 798–99 (1977). The government's action need only be "conceivably related to the achievement of a federal interest." *Almario v. Attorney General*, 872 F.2d 147, 152 (6th Cir.1989). The Sixth Circuit has opined that "this standard may be even lower than rational basis review." *Bangura*, 434 F.3d at 494-495 (6th Cir. 2006); *See also Fiallo,* 430 U.S. at 792 ("[T]he power over aliens is of a political character and therefore subject to only narrow judicial review.") (internal quotation and citation omitted).

Procedural due process requires the government to provide an individual fair process before depriving him of a protected liberty or property interest. Due process, however, 'is flexible and calls for such procedural protections as the particular situation demands.'" *Unan v. Lyon*, 853 F.3d 279, 291 (6th Cir. 2017) (quoting *Rosen v. Goetz*, 410 F.3d 919, 928 (6th Cir. 2005). In the context of immigration proceedings, an individual must show that he was prejudiced by the lack of procedural due process to establish a constitutional violation. *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004); *see also Villegas de la Paz v. Holder*, 640 F.3d 650, 656 (6th Cir. 2010). "

Plaintiffs allege that Defendants' actions violated their "Fifth Amendment substantive rights to reasonable interpretations and consideration and procedural due process rights to have a determination based on actual evidence and not supposition and suspicion. . . ." (Dkt. # 1, Pg. ID 10.) There is no fundamental right "to reasonable interpretations and consideration." Plaintiffs' substantive due process claim is inadequately pleaded on that basis alone. Even if the court were to construe Plaintiffs'

claim as one based on their fundamental right to marry, it would still fail. "A denial of an immediate relative visa [an I-130 petition] does not infringe upon [the] right to marry." *Bangura*, 434 F.3d at 496. If a denial of an I-130 petition does not infringe upon the fundamental right to marry, then neither does an involuntary withdrawal of an I-130 petition because the alleged infringement is the same in either instance—inability of the non-citizen spouse to obtain an immediate relative immigrant visa. Thus Plaintiffs cannot maintain a claim that Defendants' actions in allegedly forcing Donajane to withdraw her petition burdened her—or their—fundamental right to marry.

Even if a denial or coerced withdrawal of an I-130 petition did interfere with the right to marry, the Sixth Circuit has made clear that the government has a legitimate federal interest in preventing immigration fraud. *Id.* at 495. In the immigration context, this governmental interest is easily sufficient to justify the tangential burden, as descried by Plaintiffs, on a right to marry. Accordingly, the court will grant Defendants' motion to dismiss Plaintiffs' substantive due process claim.

Regarding Plaintiffs' procedural due process claim, many pages of their complaint are dedicated to describing the process to which they argue they were entitled, but denied. The court accepts these allegations as true for disposition of the current motion. However, as Plaintiffs recognize, a procedural due process claim must be predicated on the implication of a protected interest. *See* Dkt. # 10, Pg. ID 138 citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-570 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is

paramount."). The liberty or property interest that Plaintiffs' allege to be at issue here is not clear.

As explained above, Plaintiffs have not been denied the right to marry. Plaintiffs state there has been "infringement on [their] marriage," but they provide no explanation. (Dkt. # 1, Pg. ID 8.) Indeed, Plaintiffs apparently remain married, and claim that they continue to share "their life and finances together as husband and wife." (Dkt. # 1, Pg. ID 9.) The potential *future* injuries of which Plaintiffs complain are not established liberty or property interests and are distinct from their fundamental right to marry: "Plaintiffs live in fear of [Gassan] being placed in deportation" or "removal proceedings." (Dkt. # 1, Pg. ID 4, 8.) As Defendants point out, there is no "right of a citizen spouse to have his or her alien spouse remain in the country." *Almario*, 872 F.2d at 151.

A contention that is not squarely argued, but implied, is that denial of Plaintiffs' I-130 petition would infringe on the right to marry because it would be predicated on an official finding of a sham marriage; an official determination of a marriage's invalidity is in itself damaging to the marriage, the argument seems to say. *See Ali v. I.N.S.*, 661 F. Supp. 1234, 1247, n. 6 (D. Mass. 1986). Under this theory, perhaps USCIS could be required to hold a hearing or provide other due process procedures before denying an I-130 petition. The court need not comment on the merits of any such implied argument, because Plaintiffs' petition was not denied as it was withdrawn. Consequently—and as Plaintiffs' counsel agreed at oral argument—USCIS never made an official finding of a sham marriage. Therefore, Plaintiffs' claim under the due process clause cannot be predicated on an infringement on their right to marry.

In asserting a right to a hearing under the due process clause, Plaintiffs' counsel alludes to supposed parallels between Plaintiffs' circumstances and certain criminal contexts involving allegedly coerced confessions and involuntary pleas of guilty.

In those criminal cases, due process sometimes requires the court to undertake various procedures of review and may even entitle the defendant to a hearing and perhaps a withdrawal of his earlier involuntarily-entered plea of guilty.

However, the criminal case analogy weighs against Plaintiffs' argument, implicating as the analogy does a most well-established and important liberty interest— freedom from wrongful incarceration. Plaintiffs here have failed to identify any clearly-established liberty or property interest at stake. For this court to invoke the due process clause to mandate review here (or to provide such review itself through an in-court hearing) would be an unfounded expansion.

In sum, Plaintiffs' allegations do not support a procedural due process claim, which must be based on the deprivation of an established property or liberty interest.[3]

The court grants Defendants' motion to dismiss Plaintiffs' procedural due process claim.

## B. The APA

Overall, Plaintiffs seem to argue from equity—basically that USCIS' withdrawal policy is unreasonable. Plaintiffs argue USCIS should have what it does not, a type of

---

[3] Other courts have speculated as to whether a U.S. citizen has a property interest in an I-130 petition given that the Immigration and Nationality Act directs the Attorney General to approve the petition for a visa when a bonafide marriage exists. *See* 8 U.S.C.A. § 1154(b); *Escobar v. I.N.S.,* 896 F.2d 564, 569 (D.C. Cir. 1990); *Revelis v. Napolitano,* 844 F. Supp. 2d 915, 920 (N.D. Ill. 2012); *Stokes v. I.N.S.*, 393 F. Supp. 24, 28-29 (S.D.N.Y. 1975). No such argument is presented here.

direct procedural review and appellate process for petitioners claiming to have been coerced into withdrawal of their petitions. In the alternative, they argue this court should fill that void. To the extent Plaintiffs' argument is intended to raise a claim under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, it is both inadequately pled and premature.

Plaintiffs make only a single, general reference to the APA in their complaint invoking the statute as an alleged basis for this court's jurisdiction over their dispute. (Dkt. #, Pg. ID 3.) While they twice use the word "arbitrary" to describe USCIS' actions, they do not discuss any of the elements of a claim under the APA or allege the factual basis necessary to support said elements. (Dkt. # 1, Pg. ID 9-10.)

Moreover, Plaintiffs may seek redress under the APA only for harm caused by "final agency actions." 5 U.S.C. § 704. USCIS' refusal to allow Donajane to retract her withdrawal is not such a final agency action. The APA expressly provides that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." *Id.* Should Donajane's petition ultimately be denied upon refiling, then Donajane's withdrawal could be reviewed as an intermediate or procedural agency action that contributed to the denial of her petition, i.e., the adverse final agency action. *See Bangura v. Hansen*, 434 F.3d 487, 501 (6th Cir. 2006) (holding that the INS's finding of a fraudulent marriage is not a final agency decision and can only be challenged after it results in the denial of an I-130 petition).

Plaintiffs may be reasonable in seeking more immediate review, but as discussed below *infra* Section D, Congress has situated the petition review process within USCIS'

discretion. In enacting the APA, Congress extended the court's federal question jurisdiction to only final agency actions.

## C. The Right to Marriage

The Supreme Court has recognized the right to marry as a fundamental liberty interest under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *See Obergefell v. Hodges*, 135 S. Ct. 2584, 2604 (2015). Plaintiffs cite *Loving v. Virginia*, 388 U.S. 1, 12 (1967) and argue that Defendants actions "will cause the denial" of their "right to marry and remain married." *Loving* held invalid as unconstitutional laws which forbade interracial marriage. Neither USCIS nor any of its policies forbid Plaintiffs from becoming or remaining married. But the right to be or remain married does not carry with it the right to have one's non-citizen spouse reside in the United States. *Almario*, 872 F.2d at 151. Plaintiffs also assert a "right to companionship during marriage." The court finds no legal authority supporting the context in which Plaintiffs have asserted this right. *See Zundel v. Holder*, 687 F.3d 271, 280 (6th Cir. 2012) (holding that deportation of non-citizen spouse did not violate citizen spouse's right to companionship, if such right even existed).

Defendant's motion to dismiss a *Loving*-based claim will be granted.

## D. Writ of Mandamus

Under mandamus jurisdiction,

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C.A. § 1361. "The writ of mandamus is a "'drastic and extraordinary remedy reserved for really extraordinary causes.'" *In re U.S.*, 817 F.3d 953, 959–60 (6th Cir.

2016) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004)). The court may exercise jurisdiction pursuant to the mandamus statue "only if (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Rimmer v. Holder*, 700 F.3d 246, 264 (6th Cir. 2012) (quoting *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011)).

"Mandamus is not an appropriate remedy if the action that the petitioner seeks to compel is discretionary." *Id.* (citing *Heckler v. Ringer,* 466 U.S. 602, 616 (1984). "[T]he duty owed must be mandatory . . . ." *Jarrett v. Ashcroft*, 24 F. App'x 503, 504 (6th Cir. 2001). An individual seeking mandamus relief "must establish that he has a clear right to relief and that a federal employee has a clear, nondiscretionary duty to act." *Budrow v. Leffler*, 86 F. App'x 899, 900 (6th Cir. 2004) (citing *Heckler v. Ringer*, 466 U.S. 602, 616-17 (1984).

Plaintiffs' request for a writ of mandamus fails to meet even one of the three requirements for mandamus jurisdiction. Plaintiffs have not identified a constitutional provision, a statutory provision, or a federal regulation that grants "a clear right" to reopen Donajane's I-130 petition, or to a hearing regarding her withdrawal of the petition. Moreover, Plaintiffs have not shown any legal theory under which Defendants have a duty to reopen a withdrawn petition or provide a hearing post-withdrawal of a petition. In Plaintiffs' response to Defendants' motion to dismiss, they attempt to address this point by block-quoting for an entire page a case concerning a I-485 form application that had been pending with USCIS for three years without decision. *See* Dkt.

# 10, Pg. ID 135 quoting *Labaneya v. USCIS*, 965 F. Supp. 2d 823, 829-830 (E.D. Mich. 2013).

*Labaneya* recognized a split of authority among district courts regarding whether the processing and adjudication of I-485 forms is a statutory non-discretionary duty and thus subject to mandamus. 965 F. Supp. 2d at 827. Plaintiffs selectively quote from the portion of *Labaneya* in which the court explained the logic of those courts that have concluded it is a non-discretionary duty. *Id.* at 829. However, immediately thereafter, *Labaneya* explained the reasoning of those courts that have concluded it is a discretionary duty *not* subject to mandamus. Based on the unambiguous text of the Immigration and Nationality Act ("INA"), *Labaneya* held that "it agrees with those courts finding that the grant of discretion in 8 U.S.C. § 1255(a) encompasses the entire adjudication process, including the pace of adjudication." *Id.* at 832; *see also Id.* at 827 (noting that "all but one of the judges who have considered the issue" in the Eastern District of Michigan—ten judges of eleven—concluded that the courts lack mandamus jurisdiction).

*Labaneya* then clarified that although courts lack jurisdiction to dictate the process or pace of adjudication of I-485 form applications, USCIS has a nondiscretionary statutory duty "to adjudicate all properly filed applications" and USCIS' discretion over the process and pace of adjudication could not be used to nullify this statutory obligation. *Id.* at 832. USCIS could not effectively refuse to adjudicate an application by indefinitely delaying its adjudication. *Id. Labaneya* ordered USCIS to show cause why its significant delay in adjudicating the plaintiff's application did not amount to a refusal to adjudicate the application. *Id.* at 834.

Plaintiffs argue that forcing the withdrawal of an I-130 petition is equivalent to refusing to decide an I-130 petition and said refusal is equivalent to refusal to adjudicate a properly filed I-485 form application, which *Labaneya* stated USCIS cannot do because adjudication is a nondiscretionary duty. This argument is problematic for at least two reasons.

First, Defendants have not "refused" to decide Donajane's I-130 petition. Defendants undertook many actions to investigate and process her petition. They responded to Plaintiffs' motion to revoke her withdrawal and reopen her petition. USCIS even encouraged her to refile her petition for review. This is a far from a "refusal" to decide a properly filed petition.

Second, *Labaneya's* determination that USCIS cannot refuse to adjudicate a I-485 form has no bearing on USCIS' duties with respect to I-130 petitions, which are governed by a different statutory provision. The fact that adjudication of a I-485 form is (or may be) a nondiscretionary duty does not determine that USCIS has a nondiscretionary duty to reopen withdrawn I-130 petitions or review withdrawn petitions. In fact the statue is silent with respect to withdrawn petitions, whether alleged to have been coerced or otherwise. Defendants' only duties under the statute are to investigate and to approve the petition *if* it determines that the facts in the petition are true. *See* 8 U.S.C. 1154(b) ("After an investigation of the facts in each case, . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title . . . approve the petition. . . .").

Here, Plaintiffs allege that Defendants determined that the facts in the petition are *not* true (Dkt. # 1, Pg. ID 7.)  Plaintiffs have failed to identify a nondiscretionary duty owed to them by Defendants.

Moreover, what Plaintiffs seek in actuality is exactly what *Labaneya* determined courts have no jurisdiction over—the process of adjudication. Plaintiffs complain that UCSIS should not be able to force the withdrawal of a petition and that a petition involuntarily withdrawn should be appealable or able to be reviewed and reopened, despite USCIS' regulations stating to the contrary. While USCIS may have a duty to investigate and process I-130 petitions filed with it, how it chooses to process those petitions is not dictated by the statute. Rather it is left to USCIS' discretion.

Lastly, Plaintiffs have an adequate remedy available to them; Donajane may refile her petition. Plaintiffs contest whether this remedy is truly adequate. While not well-articulated, Plaintiffs' argument seems to be that refiling is inadequate because the allegedly coerced withdrawal itself has injured them in two respects: (1) it invalidated their previously approved I-130 petition, which rendered Gassan ineligible for LPR status, the lack of which is likely to cause numerous other consequences; and (2) it has impaired Donajane's ability to obtain an immediate relative immigrant visa through an I-130 petition in the future. Consequently, Plaintiffs insist they need an opportunity to set the record straight at a hearing before they re-file.

Plaintiffs' arguments are not entirely misplaced. BIA has held that a petitioner who has previously withdrawn his petition has a heavy burden to obtain approval of a later filed petition:

Where a visa petition has once been withdrawn based on an admission by a party that the marriage was solely entered into to bestow an immigration benefit, any subsequently filed visa petition involving the same petitioner and beneficiary must include at the time of filing: (1) an explanation of the prior withdrawal and (2) evidence supporting the bona fides of the parties' relationship . . . a prior admission made in conjunction with the withdrawal of a first visa petition can be overcome by new evidence. However, the petitioner bears a heavy burden to establish the bona fides of the relationship.

*Matter of Laureano*, 19 I. & N. Dec. 1, 3-4 (BIA 1983); *see also* USCIS Adjudicator's Field Manual- Redacted Public Version, 20.4 Petition Withdrawal (citing *Matter of Laureano*). Presumably, Plaintiffs argue that they should not be subjected to this "heavy burden" upon re-filing and that the imposition of such a burden makes more likely a rejection of their petition, the approval of which was invalidated due to only USCIS' improper actions. That is the argument Plaintiffs need to direct to USCIS upon refiling, not to this court.

When re-filing a previously withdrawn petition, USCIS invites the petitioner to provide "an explanation of the prior withdrawal." *Id*. The BIA has explained that "withdrawal by a petitioner is not necessarily an indication of fraud, [but] the facts surrounding any prior withdrawal should be considered in the event a subsequent petition is filed by the same petitioner." *See Matter of Isber*, 20 I&N Dec 676 (BIA 1993). Plaintiffs may present their arguments regarding the circumstances of the withdrawn petition for USCIS to consider at the time that they refile. If USCIS rejects those arguments, holds Plaintiff Donajane to the higher standard that is imposed on successive petitioners, and denies her refiled I-130 petition as a result, then she may appeal that decision to the BIA. The BIA may determine whether USCIS' assessment

was correct or whether Plaintiff was improperly deprived of the benefit of her initial I-130 petition due to a coerced withdrawal.

In fact, this is precisely what had occurred in a case before the BIA nearly identical to Plaintiffs' case. In *Matter of Laureano*, the petitioner argued that USCIS improperly rejected his second I-130 petition based on his withdrawal of his first I-130 petition. 19 I. & N. Dec. 1, 2 (BIA 1983). He alleged that the withdrawal of his first petition was made under duress and based on coercion, and that USCIS should not have relied upon it when assessing whether he was engaged in a bonafide marriage for purposes of his second petition. *Id.* at 2, n 1.

The BIA, considering the petitioner's arguments, concluded that the there was "no evidence of duress imposed by the Service upon the petitioner in withdrawing the first visa petition." *Id.* at 4. The BIA concluded that USCIS' consideration of the petitioner's prior withdrawal in assessing his subsequent petition was proper and that petitioner appropriately bore a heavy burden to establish a bonafide relationship in his subsequent petition.

Here, Defendants' initial approval of Plaintiffs' I-130 petition was rendered no longer valid due to it being withdrawn. Consequently, Defendants have neither denied nor approved an I-130 petition filed by Plaintiffs. A denial of an I-130 petition can be appealed, but a withdrawal cannot and USCIA cannot treat a withdrawal as if it were a denial. *Matter of Cintron*, 16 I. & N. Dec. 9, 9 (BIA 1976) (holding that a petition which has been withdrawn cannot be considered denied). Therefore, the redress Plaintiffs seek begins with the refiling of an I-130 petition.

No doubt, taking a shortcut to an immediate judicial review of an allegedly improperly withdrawn petition seems more expeditious and reasonable from Plaintiffs' perspective. Plaintiffs' favored approach, however, admits of no standards or limits, and, as discussed at oral argument, would awkwardly transform the district court into an immediate appellate overseer of the USCIS petition process generally, its doors flung open to every aggrieved applicant. This court does not dictate USCIS' operations (absent sustainable allegations of constitutional or statutory violations). And USCIS may have good reason for its withdrawal policy: allowing petitioners free reign to second-guess their choice to withdraw an I-130 petition and demand a hearing could easily be considered inefficient for the visa system as a whole.

Plaintiffs' argument raises the question of whom or what is to stop USCIS from routinely, repetitively, and wrongfully coercing the withdrawal of petitions, leveraging the provisions and limitations of the CFR to forever avoid issuing an appealable denial. Under those imagined dire circumstances, perhaps redress would emerge from the political branches that empower USCIS. Or perhaps this court's analysis would be different should that extreme situation arise and the parties briefs embraced the issue. The court is not presented with any such extreme factual allegations here.

Here, Plaintiffs have an adequate remedy available and the court will accordingly deny their request for a writ of mandamus.

### C. The Equal Access to Justice Act

The Equal Access to Justice Act grants courts the authority to award costs and fees to a party that *prevails* against an agency in a civil action. See 28 U.S.C. § 2412. A request for attorney fees under the Act must be supported by a meritorious underlying

legal claim following a judgment on that claim. Given that Plaintiffs have failed to state a claim upon which relief may be granted, they are not entitled to relief under the Act. The court will dismiss Count IV of Plaintiffs' complaint.

## IV. CONCLUSION

Plaintiffs have not identified a fundamental right that Defendants' actions have burdened. They have further failed to plead a liberty or property interest to which they are entitled but have been denied due to Defendants' actions. For these reasons they have failed to state claim under the Due Process Clause of the Constitution. Plaintiffs have not provided a legal basis for their request for a writ of mandamus because they have failed to show Defendants have a duty to provide them a hearing or that they have a right to a hearing on Plaintiff Donajane Marie's withdrawal of her I-130 petition. Plaintiffs may refile the I-130 petition to obtain the relief they seek. Because each of Plaintiffs' substantive claims is inadequately pleaded, their request for costs and fees pursuant to the Equal Access to Justice Act fails. Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss (Dkt. # 6) is GRANTED and Plaintiffs' Motion for Summary Judgment is DENIED as MOOT. (Dkt. # 7.)

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: January 19, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 19, 2018, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

s/Cleland/Judge'sdesk/c2Orders/17-12417.Mokhamad.Dismiss.aju.RHC.2